DOOLEY, J., dissenting.
 

 ¶ 47. While I acknowledge that this case is close, and the Board performed a thorough and comprehensive analysis of applicant's eligibility for admission, I would reverse the Board's decision that applicant does not have the good moral character and fitness to be admitted to the Vermont bar. Four factors primarily prompt this dissent.
 

 ¶ 48. The first is what this case does not involve. While there are allusions to potential injuries to clients in the Board and majority decisions, this is not a case where applicant has failed to fulfill his professional obligations to his clients. Indeed, applicant represented a high volume of clients in Wisconsin with no apparent indication of client complaints. Nor, as the majority states, is there any indication that applicant is dishonest or untrustworthy. See
 
 ante
 
 , ¶ 46. Nor is there any indication that applicant is an incompetent lawyer. The cases in which applicant was found in contempt involve overzealous representation rather than inadequate representation. I emphasize this because I believe that the traits that are not in issue are generally more important than a risk of overzealous representation.
 

 ¶ 49. Second, the disciplinary body in Wisconsin imposed a relatively light sanction of a public reprimand for the conduct that led to the contempt citation in two of the cases. I do not condone contemptuous conduct, but we have only a limited understanding of the culture and circumstances in which the contempt citations arose. I am concerned that we are weighing the instances of misconduct more heavily than the evaluative body of the Wisconsin judiciary which is much closer to the events and circumstances.
 

 ¶ 50. Third, my review of the record indicates that applicant has taken responsibility for the inappropriate tactics he employed that led to the contempt citations but continues to assert that the unfair treatment of his clients and the circumstances with which he was confronted required passionate zealous advocacy. This is a fine line, and in my view the difficulty in walking it has caused much of the Board's and majority's view that applicant continues to assert that what he did was proper.
 
 [6]
 

 ¶ 51. I am more persuaded by the Washington Character and Fitness Board's conclusion that: "Mr. Brittain seems to have better insight into his past and ways to avoid such misconduct in the future. He is maturing and accepting responsibility for his actions. Mr. Brittain and his witnesses have indicated he will no longer return to the behavior exhibited in 2008 through 2011." There is some risk that applicant will again engage in the conduct that caused the contempt citations, but I do not believe he is "likely" to do so, the standard for determining good moral character. See V.R.A.B. § 11(b)(1).
 

 ¶ 52. Finally, I am influenced by applicant's passion for justice in an area of the law where we need more zealous and skilled advocates. In saying this, I am not endorsing professional misconduct or suggesting that we should lower character and fitness admission standards to admit passionate advocates. I am suggesting that we not confuse passion and zealous advocacy with character flaws.
 

 The majority found that he offered no evidence of work with a mentor or counseling, and I note no such evidence. See
 
 ante
 
 , ¶ 39. Evidence of this type was presented to the Washington Board and relied upon by it. The Washington Board found that applicant "seems to have better mentors who are candid with him about his behavior" and that he has taken "professional growth seminars with Dr. O'Donnell." If this evidence is important I would remand to the Board to allow applicant to present it there.